NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACK L. FROLOW, | Hon. Stanley R. Chesler |
| | Civ. No. 05-4813 |
| Plaintiff, | |
| v. | OPINION |
| WILSON SPORTING GOODS CO., | |
| Defendant. | |

**CHESLER, District Judge**

THIS MATTER comes before the Court on the motion of Defendant, Wilson Sporting Goods, Co. ("Wilson") to stay Count I of Plaintiff's Complaint and to compel arbitration and to dismiss the remainder of Plaintiff's Complaint. For the reasons stated below, and for the reasons stated on the record at oral argument, Defendant's motion will be GRANTED in part and DENIED in part.

### I. BACKGROUND

Plaintiff, Jack L. Frolow ("Frolow") is the owner of all rights, title and interest in U.S. Patnet No. 4,690,405 and U.S. Reissue Patent No. RE 33,372 relating to tennis rackets. (Compl. ¶ 6.) Frolow and Wilson entered into a License Agreement effective March 1, 1989 pursuant to which Frolow granted Wilson an exclusive license under the patents to use, manufacture or sell tennis racquets covered by the patents. (Id. ¶ 7.) The License Agreement obligates Wilson to

1

pay Frolow a royalty for sales of tennis racquets that utilize the technology covered by the patents in suit.

Section 1.2 of the License Agreement defines "Licensed Articles" as "tennis racquets that are covered by one or more unexpired or otherwise valid claims contained in the Licenced Patents and tennis racquets which are based on use of Frolow's know-how." (Helms Cert. Ex. 1.) Wilson agreed to pay Frolow royalties based upon 5% of Net Sales of the Licensed Articles sold in the United States, and 2% of net sales of the Licensed Articles sold outside the United States. (Id., § 4.1.) Section 4.2 of the License Agreement, which is at the core of this dispute, sets forth the manner of payment of the royalties. Wilson must pay royalties to Frolow within 90 days following the end of each calendar quarter and must accompany payment with a reporting statement showing the net sales of the Licensed Articles sold and a computation of the royalty amount due Frolow. (Id., § 4.2.) In the event of a dispute, Section 4.2 provides in pertinent part:

> WILSON shall keep and cause to be kept accurate records showing the number, the Net Sales, and date of first use, sale or other transfer of all Licensed Articles, sold, used, or otherwise transferred by WILSON. WILSON shall make its records available for inspection by a certified public accountant of FROLOW's choice ("FROLOW's AUDITOR") at reasonable intervals upon written request and at the sole expense of FROLOW during normal business hours, but only for three (3) calendar years from the date of audit inquirty by FROLOW. Any information derived from said audit shall be used by FROLOW solely for the purpose of review of WILSON's royalty reports of Net Sales. If the amount determined by FROLOW's AUDITOR to be owed by WILSON exceeds the amount of actual royalties paid by m ore than ten (10) percent, and such results are confirmed by WILSON's auditor then the cost of this particular audit shall be borne by WILSON. If FROLOW's and WILSON's auditors disagree the parties shall choose an independent "Big 8" public accounting firm to make such finding, and the parties agree to be bound by this third finding.

(Id., § 4.2.)

In a letter dated May 13, 2004, Frolow formally requested that Wilson make its records of Net Sales for the years 2001-2003 available for inspection by Frolow's Auditor. (Helms Cert., Ex. 2.) In his letter, Frolow made the following request: "In order to determine the rackets which Wilson believes do not fall under the definition of the Licensed Article under Section 1.2, Wilson should expeditiously furnish me the specifications for the racket in question, wherein Wilson believes it does not comply with Section 1.2 of the License Agreement." (Id. at 4.) Frolow also explained his position with respect to why certain racquets having a certain weight, bearing the trademark "HAMMER" or having Frolow's patent numbers theron, fell within the scope of the claims. (Id. at 3.)

In response to Frolow's request, Wilson provided the information required by Section 4.2 to Frolow's auditor; Wilson did not provide the technical specifications for the tennis racquets requested by Frolow. (Helms Cert., Ex. 3.) Following the audit, Frolow's auditor noted underpayment of royalties by Wilson. (Id. Ex. 3-5.) The auditor also pointed out issues concerning the exclusion of racquets from the documentation to be provided and the scope of Wilson's deductions from net sales. (Id.)

Wilson's auditor reviewed the analyses of net sales prepared by Frolow's auditor. Wilson notified Frolow by letter that it disagreed with the conclusions reached by Frolow's auditor and explained its position as to why certain racquets did not fall within the scope of the Frolow patent. (Pl. Br. 4; Def. Br. 7.) The determination of royalties made by Wilson's auditor differed from that made by Frolow's auditor. (Helms Cert. Ex. 5, 6.)

Frolow instituted this lawsuit on October 3, 2005 alleging Wilson has breached the Licensing Agreement by underreporting royalties on Licensed Articles. (Compl. Count I.)

Wilson filed the instant motion to compel arbitration as to Count One of the Complaint on November 23, 2005.

## II.  DISCUSSION

Federal law favors the arbitration of disputes.  The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, reflects Congress's recognition of the desirability of arbitration.  The Act establishes that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."  Moses H. Cone Memorial Hosp. V. Mercury Const. Corp., 460 U.S. 1, 24 (1983).  The Supreme Court, however, has also made clear that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582 (1960).

In its motion to compel arbitration, Wilson argues that the royalty dispute between itself and Frolow falls squarely within Section 4.2 of the Licensing Agreement and therefore must be submitted to arbitration[1].  In opposition, Frolow argues that the issues involved in the instant case do not involve pure accounting of royalties.  Rather, Plaintiff argues, the issues are substantive including whether Wilson breached the License Agreement: (1) by failing to pay royalties on tennis racquets which Frolow alleges constitute Licenced Articles under the scope of the patent; (2)  by failing to provide technical specifications of such racquets sold by Wilson; (3) by not

---

[1]The language in Section 4.2 of the Licensing Agreement calling for the appointment of an independent auditor to resolve royalty accounting disputes does indeed constitute an enforceable arbitration clause.  See McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825 (2d Cir. 1988) ("[i]t is . . . irrelevant that the contract language in question does not employ the word 'arbitration' as such").  The language clearly manifests the intentions of the parties to submit certain disputes to a third party for binding resolution.

paying royalties on foreign sales and refusing to provide sales information on foreign sales; and (4) by taking deductions from the net sales of licensed products which are not authorized under the License Agreement. (Pl. Br. 5-6.)

The clause at issue here is a narrow one. Section 4.2 is not the sort of broad arbitration clause in which parties agree to submit any and all disputes to arbitration. The plain language of the clause indicates that the arbitration provision pertains to the mathematical calculation of royalties[2] involving the skills of an auditor or certified public accountant. Such skills would normally involve the calculation of net versus gross sales and reviewing deduction and royalty percentage calculations. Likewise, the parties decision to choose accountants as their arbiter sheds light on their intention. See McDonnell, 858 F.2d at 832-33 ("[h]ad the parties intended to submit all issues regarding the utility's good faith to an arbitrator, we do not believe that they would have chosen a tax counsel"). The choice of such a specialized third-party arbitrator coincides with the scope of Section 4.2 of the License Agreement, that is, the arbitrator was to be someone familiar with issues relating to accounting and not someone who was legally or technically trained.

The overall issues in this case are not ones which are subject to arbitration. The core issue appears to be whether certain Wilson racquets not included in the documentation submitted to Frolow's auditor, make use of the Frolow patents and therefore fall within the scope of the

---

[2] For example: (1) the reporting statement Wilson is required to produce with the royalties must be prepared "in accordance with WILSON's standard royalty accounting procedures," (2) only if the amount of royalties calculated by Frolow's auditor exceeds the amount of royalties paid by ten percent will Wilson bear the cost of the audit, and (3) the arbitration provision only comes into play if the calculations done by Wilson's auditor differ from those of Frolow's auditor. (Helms Cert. Ex A, § 4.2.)

License Agreement.  The agreement simply cannot be reasonably construed to indicate that the parties delegated the decision of which racquets do or do not constitute a Licensed Article to a "Big 8" accounting firm.  In part, this is because of the nature of the arbitrator selected and in part because of the nature of the information required to be made available to the auditors.  Pursuant to Section 4.2, Wilson is only required to produce, and did in fact produce, records showing the sales and net sales figures for all Licensed Products.  Such information would enable an auditor to review Wilson's calculation of royalties, but would not shed substantial light on the issues in the present lawsuit.  The information Wilson must provide pursuant to Section 4.2 would not enable Frolow to determine whether certain racquets fall within the definition of a Licenced Article.  In short, the agreement clearly is predicated upon an assumption that there not be a dispute about what constitutes a Licensed Article.

Accordingly, this Court will deny Defendant's motion to compel arbitration except to the limited extent that once there has been a resolution as to which products are licensed, any dispute as to actual calculations of royalties should be solely subject to the dispute resolution agreed upon by the parties.  Therefore, the parties must resolve which racquets being sold by Wilson are in fact Licensed Articles as defined by Section 1.2 of the License Agreement.  Once these issues are resolved, any remaining dispute as to the actual calculation of royalties, including whether deductions Wilson took from net sales were authorized under the License Agreement,  will be subject to the dispute resolution mechanism set forth in Section 4.2 of the License Agreement.

### III.  CONCLUSION

For the foregoing reasons, Wilson's Motion to Compel Arbitration as to Count One of Plaintiff's Complaint is **DENIED**.  For the reasons set forth on the record during oral argument,

Wilson's Motion to Dismiss Count Two of Plaintiff's Complaint is **GRANTED**.  An appropriate form of order will follow.

 s/ Stanley R. Chesler  
Stanley R. Chesler, U.S.D.J.