***NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JACK L. FROLOW,** | Civil Action No. 05-4813 (FLW) |
| **Plaintiff,** | |
| v. | MEMORANDUM OPINION |
| **WILSON SPORTING GOODS, CO.** | |
| **Defendant.** | |

**BONGIOVANNI, Magistrate Judge**

This matter having been brought before the Court by Plaintiff Jack L. Frolow ("Plaintiff" or "Mr. Frolow") for leave to file an Amended Complaint [Docket Entry No. 68] to assert five additional claims against Defendant Wilson Sporting Goods, Co. ("Defendant" or "Wilson"). For the foregoing reasons, Plaintiff's Motion for Leave to File an Amended Complaint is DENIED.

**I.  Background and Procedural History**

In February of 1989, Plaintiff entered into a Licence Agreement with Defendant, granting Defendant the exclusive right and license worldwide to use, manufacture, sell or otherwise dispose of tennis racquets that are covered by Plaintiff's patents, including U.S. Patent No. 4,690,405 and U.S. Re-Issue Patent No. RE 33,372. (Pla.'s Comp. ¶7.)  Plaintiff's claims arise out of alleged breaches of that agreement and on October 3, 2005, Plaintiff filed the initial complaint in this matter. [Docket Entry No. 1].  On June 14, 2006, the initial Rule 16 Conference was held by this Court and on June 15, 2006, the Court entered the pre-trial scheduling order. [Docket Entry No. 20].  On August 24, 2007, Defendant  filed a Motion for Summary Judgment. [Docket Entry No. 38].  On March 31, 2008, the Court entered an Order denying in part and granting in part Defendant's Motion

for Summary Judgment. [Docket Entry Nos. 43 & 44]. The Court found that 37 of the 42 disputed racquets are not "Licensed Articles" as defined by the License Agreement. [Docket Entry No. 43]. The Court further found that a racquet model cannot be found to infringe by comparing the manufacturing specification of Wilson to the patent claims. [Docket Entry No. 43]. The Court further found that using a Wilson trademark ("Hammer"), on any disputed racquet does not equate with patent infringement, or otherwise brings a disputed racquet within the claims of the '372 Patent. [Docket Entry No. 43]. The Court also granted Defendant's request to dismiss Plaintiff's claim of patent mis-marking because no further relief can be granted as no claim of patent mis-marking was pending before the Court to further allege. [Docket Entry No. 43]. Subsequently, Plaintiff filed a Motion for Reconsideration of the Court's Summary Judgment Order, which the Court denied on September 9, 2008 [Docket Entry No. 58]. On November 24, 2008, this Court held the Final Pretrial Conference, at which time Plaintiff was given leave to file his Motion for Leave to File an Amended Complaint and the conference adjourned until after that Motion is decided. On December 12, 2008, Plaintiff filed the instant Motion for Leave to File an Amended Complaint, seeking to add the following: (a) a Second Breach of Contract count stemming from Wilson's failure to comply with the "Best Efforts" clause of Section 7.13 of the License Agreement; (b) a third Breach of Contract count, stemming from Wilson's failure to pay Mr. Frolow a proper percentage of royalties for sales occurring in the United States; (c) Patent Mismarking under 35 U.S.C. §292 , stemming from Wilson's marking tennis racquets with Mr. Frolow's patent number(s), knowing the racquets were not covered by the claims of such patents; (d) a fourth Breach of Contract count, stemming from Wilson's improper deduction of royalties owed to Frolow for racquets sold with headcovers to Frolow; and (e) a fifth Breach of Contract [count] for Wilson's failure to pay royalties to Frolow for

racquets falling within the scope of claims 56 and 57 of the '372 patent and claims 1, 2, 5, 6, 7 and 51 of the '419 patent." (Pla.'s Mem. Supp. Mot. at 4-5.)

In support of his Motion for Leave to File an Amended Complaint, Plaintiff puts forth many arguments, but for the sake of efficiency, only the most pertinent are recited herein. Plaintiff initially argues that pursuant to Fed. R. Civ. P. 15(a), leave to amend should be freely given. (Id. at 3.) Plaintiff further argues that "'in the absence of substantial and undue prejudice, a denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed, or futility of amendment.' Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of the Virgin Islands, Inc., 663 F.2d 419, 425 (3d Cir. 1981)." (Id. at 4.) Plaintiff argues that none of those circumstances are present in the matter at hand and therefore leave to amend should be granted. (Id. at 5.) Specifically, Plaintiff argues that Plaintiff brings this Motion in "good faith" and Defendant will be unable to prove "bad faith" on the part of the Plaintiff. (Id. at 5-6.) Plaintiff further argues that "the Third Circuit has held that 'bad faith' requires the Court to 'focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier.' See Addams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984) (finding that it is not bad faith to wait for a court decision on an original legal theory before amending the pleadings to incorporate a new legal theory)." (Id. at 6.) Plaintiff further argues that he filed the instant Motion "not more than three months after the final disposition of a significant portion of the original legal theory." (Id. at 7.)

Plaintiff next argues that his Motion is timely and without undue delay. Specifically, Plaintiff argues that "[w]here the facts supporting the proposed amended cause(s) of action have been well-known, or at least available, to all the parties, the burden for proving 'undue delay' is significantly more difficult. Adams, 739 F.2d at 868." (Id. at 8.) Plaintiff further argues that "the basic facts

3

supporting the proposed amended causes of action have been well known to both parties since as early as 1989, when the License Agreement was executed by both Wilson and Mr. Frolow...[and] [t]he more specific facts supporting the causes of action in the proposed First Amended Complaint arose through Wilson's own actions and pleadings submitted in connection with the original cause of action." (Id.)

Plaintiff next argues that his delay in seeking leave to amend the complaint is justified given the procedural history of the present case. (Id. at 12.) In support of this assertion, Plaintiff states that given Wilson's Motion for Summary Judgment, the evidence provided therein, the Court's ruling thereon and Plaintiff's Motion for Reconsideration, the delay is justified. (Id.) Plaintiff further argues that "many of the facts to support the proposed additional causes of action only first became apparent in Mr. Severa's Expert Report [an expert for Defendant]." (Id. at 13.)

Plaintiff next argues that any prejudice to Defendant if the amendments are permitted is "incidental and nominal" compared to the hardship to the Plaintiff if leave to amend is not permitted. (Id.) In support of this statement, Plaintiff argues that "'incidental prejudice to the nonmoving party is not a sufficient basis for denial of an amendment; prejudice becomes 'undue' when the nonmoving party shows that is would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered,' were the proposed causes of action presented earlier. In Re Bristol-Myers Squibb Sec. Litig., 228 F.R.D. 221, 228 (D.N.J. 2005)." (Id. at 14.) Plaintiff further argues that "every proposed additional cause of action arises from a fact or legal position presented by Wilson in its defense to the cause of action currently pending before the Court, or to a fact or position taken by Wilson through the course of these proceedings." (Id.) Plaintiff further argues that any argument that "additional discovery required will be substantial and should thus be considered

4

an undue prejudice...is without merit." (Id.)  Plaintiff further argues that the hardship he would suffer substantially outweighs any potential prejudice to Defendant.  (Id. at 16.)  Specifically, Plaintiff states that "Mr. Frolow is a ninety-two year old man who wants this litigation to be completed as soon as possible.  In the event the Court does not grant Mr. Frolow's Motion for Leave, Mr. Frolow will likely seek an interlocutory appeal at the Federal Circuit for both the denial of this motion, as well as other issues developed throughout the course of this proceeding...Requiring Mr. Frolow to wait out such a time frame is not only a substantial hardship on Mr. Frolow, but highly prejudicial as well." (Id.)

In opposition, Defendant puts forth many arguments, but for the sake of efficiency, only the most pertinent are recited herein.  Defendant initially argues that Plaintiff "has known or had access for years to all of the facts needed to assert his five new claims.  Discovery has been closed for over two years.  All final fact issues were resolved by the motions to compel submitted in 2006." (Def. Opp. at 7.)  Defendant further argues that "the Third Circuit has admonished that: 'the passage of time, without more, does not require that a motion to amend...be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party.' Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984)." (Id.)  Defendant further argues that "allowing Frolow to amend his complaint would require re-opening discovery, which not only prejudices Wilson, but also unduly delays this case proceeding to trial.  See, e.g., Johnston v. City of Phila., 158 F.R.D. 352 (E.D. Pa. 1994)." (Id. at 8.)  Defendant further argues that if the proposed amended claim regarding "best efforts" had been included in the original complaint,  Defendant would have undertaken "extensive discovery of marketing by Wilson and by third party competitors... as well as a new set of expert reports going to the reasonableness

5

of Wilson's development and marketing strategies." (Id. at 8-9.) Defendant further argues that Plaintiff's proposed amended claim regarding the racquetball racquets "would require essentially repeating the last 3 years of discovery, testing and expert reports on a class of racquets that Frolow has never mentioned, questioned or claimed." (Id. at 9.)

Next, Defendant argues that Plaintiff's "best efforts" claim is barred by waiver and res judicata, focusing primarily on the substance of Plaintiff's underlying case and Plaintiff's summary judgment brief. (Id. at 9-11.) Specifically, Defendant argues that "Frolow never argued in summary judgment that the 37 dismissed racquets should be treated as Licensed Articles under the best efforts provision in section 7.13 of the License Agreement...[and] [i]n Laborers' Inter. Union of North America, AFL-CIO v. Foster Wheeler Energy Corp., 26 F. 3d 375, 398 (3d. 1994), the Third Circuit held that, "An issue is waived unless a party raises it in its opening brief, and for those purposes, a passing reference to an issue...will not suffice to bring that issue before this Court." (Id. at 11.) Defendant further argues that "this Court dismissed the 37 disputed racquets in summary judgment; accordingly, res judicata bars Frolow from re-litigating whether they are Licensed Articles under any other theory." (Id.)

Defendant further argues that Frolow's proposed claim for breach of the "best efforts" clause is futile because Plaintiff's allegations are legally insufficient to state a claim. (Id. at 12.) Defendant contends that "Wilson is legally entitled to exercise sound business judgment in fulfilling its 'best efforts' Frolow failed to allege that Wilson failed to use sound business judgment, and failed to allege how Wilson may have so failed. His claim would therefore be insufficient as a matter of law." (Id. at 13.)

6

Defendant further argues that "over two years after discovery closed and Wilson moved to compel disclosure of every disputed racquet, and the specific basis for claiming they are License Articles. Frolow is seeking to add a whole new class of racquetball racquets to the case. They were neither disclosed in fact discovery nor a part of Frolow's expert reports, nor mentioned by Frolow at any time until now...There can be no excuse for this undue delay, which in itself is sufficient for this Court to deny the amendment. Miller Products, Co., Inc. v. Veltek Associates, Inc., 218 F.R.D. 425, 427 (D. Del. 2003)." (Id. at 15.) Defendant further argues that "Frolow cannot justify the delay of 20 years to assert a claim against racquetball racquets that have been available to him the entire 20 years, waiting until the eve of trial to do so. Frolow cannot overcome the undue prejudice to Wilson of having to start this case over from scratch when Frolow sat on this claim for 20 years, never one asserting it in this case." (Id.)

Defendant further argues that "Frolow raised a mismarking issue in discovery and in his expert reports from 2 years ago. He has clearly been contemplating it for years, and has all of the facts regarding it from Wilson for years...Accordingly, 2 more years of delay in filing this claim cannot be justified by Frolow." (Id. at 16.)

Defendant further argues that "Frolow's attempt to assert a claim, in an amended complaint, for royalties on tennis racquet head covers is clearly filed in bad faith and is barred by res judicata since this issue has already been determined by this Court. [citation omitted]. This Court ruled [in its Summary Judgment opinion] that head covers are not part of Licensed Articles to the extent that parties have deducted them from royalty payments." (Id. at 18.)

Defendant further argues that "Frolow's final new claim, seeking an award of 5% royalties on foreign sales which, under the License Agreement, are only 2% sales, is not explained in his

7

Motion." (Id. at 20.) Rather, it just "appears" in his proposed amended complaint. (Id.) Defendant further argues that the Court has already precluded this final new claim in its April 5, 2006 Order where it states: "any dispute about the actual calculation of damages...will be subject to the dispute resolution mechanism set forth in Section 4.2 of the License Agreement." (Id. at 20.)

In his Reply, Plaintiff further argues that Defendant failed to prove that Plaintiff's Motion is filed in "bad faith." (Pla.'s Reply at 1.) Plaintiff contends that "prior to [the Court's Order on Defendant's Motion for Summary Judgment], Mr. Frolow's arguments were premised on certain disputed racquets being Licensed Articles either under a literal infringement or infringement under the doctrine of equivalents theory. Thus prior to such Order, Mr. Frolow would have jeopardized his own legal position by presenting his Motion for Leave to Amend the Complaint and accepting Wilson's defense that it intentionally made non-Licensed Articles." (Id. at 2.)

Plaintiff further argues that "in a failed attempt to support its argument that Mr. Frolow's Motion constitutes "undue delay" under Fed. R. Civ. P. R. 15(a), Wilson relies upon In Re Bristol-Meyers [*sic*] Squib [*sic*], 228 F.R.D. 221 (D.N.J. 2005). [citation omitted]...However, In Re Bristol-Meyers [*sic*] Squib [*sic*] Securities Litigation involves a dispute within the confines of the Private Securities Litigation Reform Act (PSLRA)...As Wilson neglected to disclose to this Court, in a PSLRA litigation, a court is "guided by the 'PSLRA's unique impact of narrowing application of [the Rule 15] (*sic*) standard in securities fraud cases," with respect to the timeliness of filing a Motion for Leave. Id., citing In re NAHC, Inc. Sec. Litig., 306 F.3d. 1314, 1314 (3d Cir. 2002)." (Id. at 4.)

Plaintiff further argues that "Wilson's arguments regarding 'prejudice' fail to prove 'undue prejudice'...Wilson has been well aware of Section 7.13 of the License Agreement (i.e. the 'Best Efforts' clause) since Wilson drafted the exclusive License Agreement between Wilson and Frolow,

8

almost twenty years ago, in 1989...Thus, where Wilson has been well aware of its obligations under the License Agreement, Wilson cannot now argue it is unduly prejudiced by Mr. Frolow's attempt to assert that provision against it." (Id. at 5.) Plaintiff further argues that "in reviewing the discovery of this case, Mr. Frolow put Wilson on notice at his March 16, 2007 deposition, about his intention to enforce the "Best Effort" provision of the License Agreement, if necessary, during discovery...[the following is a quote from Mr. Frolow's dep] Mr. Frolow: '...Say, for example, I want the spec data because if you write a spec, that's outside of what my racquet claims what they are doing, you are suppose to do your Best Effort [under the License Agreement] to meet it.'" (Id. at 6.)

Plaintiff further argues that Defendant also had notice of the other proposed amended claims. (Id. at 7.) Specifically, Plaintiff alleges that Defendant had knowledge of the head covers improper deduction theory because it was argued by Plaintiff at the Summary Judgment stage; that Defendant had knowledge of the false marking theory because it was discussed as early as Judge Chesler's 2006 Order; that Defendant had knowledge of the theory of the racquets falling within claims 56 and 57 of the '372 Patent because it was part of the License Agreement; and that Defendant had knowledge of the improper foreign sales theory because Defendant was notified within three months of Defendant providing such sales figures to Plaintiff's auditor in July 2008. (Id.)

## II.  Legal Standard and Analysis

Pursuant to FED.R.CIV.P. 15(a), leave to amend the pleadings is generally given freely. See Foman v. Davis, 371 U.S. 178, 182 (1962); Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,

9

[or] futility of the amendment." Id.  However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted.  Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004).

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment." Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (quoting Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)).  To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction.  See Long, 393 F.3d at 400.  Delay alone, however, does not justify denying a motion to amend.  See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).  Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate.  Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984).  Moreover, unless the delay at issue will prejudice the non-moving party, a movant does not need to establish a compelling reason for its delay.  See Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of Virgin Islands, Inc., 663 F.2d 419, 426 (3d Cir. 1981).  Further, in examining bad faith, like undue delay, the Court looks at the moving party's reasons for not amending sooner.  Lyon v. Goldstein, Civil Action No. 04-3458 (MLC), 2006 WL 2352595, at *4 (D.N.J. Aug. 15, 2006).

Having reviewed the submissions by the parties and considered all of the arguments put forth, under the circumstances of this case, the Court finds that the interests of justice militate against

permitting Plaintiff's proposed amendments. While Plaintiff is correct that leave to amend the pleadings is generally freely given, there are limits to the Court's leniency. Here, Plaintiff's Motion must be denied because Defendant would be unfairly prejudiced by Plaintiff's proposed amendments because it would require the Defendant to expend significant additional resources to conduct discovery and prepare for trial and it would significantly delay the resolution of the dispute.

The original Complaint, which currently governs Plaintiff's claims in this matter consists of one count of breach of contract and one count of patent infringement. The Court's Order and Opinion regarding Defendant's Summary Judgment Motion [Docket Entry Nos. 43 & 44] further simplified the issues to be addressed in this matter. The discovery taken in this matter was tailored to the allegations contained in the Complaint. According to the initial scheduling order entered in this case, fact discovery was to close September 15, 2006. [Docket Entry No. 20]. Even with the extensions granted by this Court, discovery in this matter was still completed two years ago. On November 24, 2008, the Court met with the parties for the purpose of conducting the Final Pretrial Conference. It was at this time that Plaintiff revealed his intention to seek to amend his Complaint.

Through his instant Motion, Plaintiff seeks to amend the pleadings in order to add five new causes of action. Plaintiff's proposed amendments go well beyond the Complaint as it currently exists and, if permitted, would necessitate discovery being re-opened. Given the extent of Plaintiff's proposed amendments, it is likely that significant additional discovery will be needed, despite Plaintiff's arguments to the contrary. In cases such as this, when the initial complaint was filed in 2005; when discovery has closed years ago; when dispositive motions are complete; and when the final pretrial conference has already been convened, the need for additional discovery would be prejudicial to Defendant. The need for additional discovery will clearly delay the resolution of this

matter, which would otherwise be ready for the final pretrial conference to resume and trial to commence thereafter. Further, the need for additional discovery will without a doubt increase the parties', and more importantly Defendant's, costs and expenses incurred in litigating this matter. Under these circumstances, the Court finds that Defendant would be unduly prejudiced by the addition of Plaintiff's proposed amendments.

Plaintiff attempts to argue that the Court should evaluate the prejudice of Defendant "'balanced against the hardship to Plaintiff if it is denied.' Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981.)" (Pla. Mem. at 16; Pla. Reply at 8.) Specifically stating that "Mr. Frolow is a ninety-two year old man who wants this litigation to be completed as soon as possible. In the event the Court does not grant Mr. Frolow's Motion for Leave, Mr. Frolow will likely seek an interlocutory appeal at the Federal Circuit for both the denial of this motion, as well as other issues developed through the court of this proceeding. As is well known, the time frame for an appeal, a remand and eventual trial could very likely extend this proceeding for another three to four years. Requiring Mr. Frolow to wait out such a time frame is not only a substantial hardship on Mr. Frolow, but highly prejudicial as well." (Pla. Mem at 16.) Plaintiff re-iterates nearly the same argument in his Reply. At the outset, Plaintiff only cites to an Eighth Circuit in support of his assertion that the Court should balance the hardship to both parties when evaluating the prejudice element of a motion to amend. See Buder, 644 F.2d at 694. The Court can only presume the Plaintiff does not cite to any Third Circuit opinions, which would be controlling, because the Third Circuit has specifically held that "[t]he question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the defendants." [*emphasis*

12

*added*] Adams v. Gould, 739 F.2d 858, 868 (3rd Cir. 1984).   Therefore, the "hardship" to Plaintiff if the Motion to Amend is not granted is of no moment to this Court when conducting the analysis of whether to permit an amendment of the complaint and Defendant did not need to address that argument put forth by Plaintiff because it is entirely irrelevant.  Further, for Plaintiff to argue that it is a hardship if his amendments are not permitted  because he would be required to appeal the decisions which would take a great deal of time is preposterous.  If a losing party is permitted to use the threat of an appeal and the potential length of time that it would take for the appeal to be decided as the basis for prejudice or hardship, then that factor would cease to be relevant in any analysis because every losing party could threaten an appeal as the basis to claim prejudice.  Further, the fact remains that Mr. Frolow was aware of these potential claims at least two years ago and chose, apparently for strategic reasons, not to raise the proposed new claims and therefore cannot attempt to use his age as a legitimate basis for granting this motion.

     The Court's holding today is consistent with previous holdings by other courts in this District, including that in In Re Bristol-Myers Squibb Sec. Litig., 228 F.R.D. 221 (D. N.J. 2005.) In that case, several class actions were filed against Bristol-Myers Squibb and its officers, alleging violations of federal securities law and state common law. Id.  On or about April 29, 2002, Defendants moved for Partial Judgment on the Pleadings, and on June 6, 2003, Plaintiff cross-moved for Leave to File a Second Amended Complaint. Id.  On August 19, 2004, the Court issued an Opinion granting and denying in part, Defendants' Motion for Partial Judgment on the Pleadings and Plaintiff's Cross-Motions for leave to file a Second Amended Complaint. Id.  As in the case at hand, fact discovery in that matter had closed, with the parties having engaged in wide-ranging fact discovery. Id. The parties had submitted a Proposed Final Pretrial Order and the Final Pretrial Conference began, but

was aborted on December 15, 2004, due to the referencing of new statements here in issue. Id. Finally, Defendants' summary judgment motion was filed December 30, 2004 and was pending before the District Judge. Id. Defendants in that case were not addressing the futility of the proposed amendment and instead reserved their right to examine the Proposed Complaint under the PSLRA's heightened pleading requirements and to move to dismiss that complaint if the Court were to grant leave to file the amended complaint. Id. Therefore, Defendants in that case were asking the Court to deny leave to amend on the grounds of prejudice and/or undue delay alone. Id. Plaintiff in that case argued that any delay was occasioned by the Court's need to resolve several complex motions, including Defendants' motion for partial judgment on the pleadings, which was not ultimately decided until August 30, 2004. Id. Additionally, Plaintiff argued that many of the additional statements the Third Amended Complaint seeks to add were derived from documents and other sources that Defendants did not produce until approximately the same time that Lead Plaintiff filed its June 2003 motion to amend, or until significantly later. Id. Therefore, the facts of that case were substantially similar to the facts in the instant matter.

The Court in In Re Bristol-Myers Squibb held that "[the] Motion arrive[d] after more than four and one-half years of exhaustive discovery and complex motion practice by parties represented by sophisticated counsel. Plaintiff, at this belated date, nearly a year after the close of fact discovery, seeks to again amend the Complaint. It bears reiterating, that this matter arises after the production of nearly four million pages of documents and the depositions of forty-four fact witnesses. The parties combined have submitted the reports of twenty-six experts and indeed continue expert depositions to date. Defendants have filed for summary judgment and the Final Pretrial Conference was begun,

but not completed...The Court finds that permitting Plaintiff to amend the Complaint, at this late stage in the proceedings, would surely prejudice Defendants. See e.g., Lorenz, 1 F.3d at 1414." Id.

The Court further held that "[s]pecifically, allowing Plaintiff to amend the Complaint at this point 'deprives [the Defendants] of fair notice, possibly discovery, and the opportunity for motion practice ....' Wilson v. Muckala, 303 F.3d 1207, 1215-16 (10th Cir.2002). Permitting this amendment, at such a late date, could only result in a serious impairment of the nonmovant's ability to present its case. Harter v. GAF Corp., 150 F.R.D. 502, 509 (D.N.J.1993). Additionally, permitting such an "eleventh hour" amendment would necessarily delay the commencement of an already very complex and lengthy class action trial. Indeed, Defendants would have to examine each new claim and conduct discovery to fairly defend themselves against these new allegations. Allowing these new amendments would also trigger fresh rounds of motion practice further delaying the end of the case. Perhaps most significantly, Plaintiff had previous knowledge of these statements and had ample time to amend its Complaint prior to the expiration of the deadlines to amend pleadings and to conduct discovery. Plaintiff simply offers no satisfactory reasoning as to why these statements were not included in any of the previous Amended Complaints...The Court finds that Plaintiff had ample opportunity to amend the Complaint to add these new statements, prior to the expiration of the deadlines to amend pleadings and to conduct discovery, and failed to do so. Accordingly, the Court finds that allowing the amendment now would result in undue delay to this already protracted litigation. Additionally, the Court finds that given the advanced stage of the litigation, coupled with the enormity of discovery, amendment at this late stage would result in undue prejudice to the Defendants." (Id.)

The similarities of the facts of <u>In Re Bristol-Myers Squibb Sec. Litig.</u> and the instant case, further supports the Court's holding here.  Plaintiff has argued that <u>In Re Bristol-Myers Squibb Sec. Litig.</u> is not applicable to the case at hand because that holding only applies to cases under the PSLRA.  (Pla.'s Reply at 4.)  However that is incorrect.  The Court in <u>In Re Bristol-Myers Squibb Sec. Litig.</u> specifically denied the Plaintiff's Motion for Leave to Amend under the Rule 15(a) standard and, in the alternative, the heightened standard under the PSLRA. "Defendants ask the Court to deny [L]ead [P]laintiff leave to amend on the grounds of prejudice and/or undue delay alone." <u>Id.</u> at 227.  "<u>Alternatively</u>, the Court concludes that granting leave to amend the Complaint at this time would frustrate the heightened pleading requirements of the PSLRA, triggering fresh rounds of motion practice further delaying the end of the case." <u>Id.</u> at 230.  "The Motion is therefore <u>alternatively</u> denied under the heightened pleading standard set forth under the PSLRA." [*emphasis added*].  <u>Id.</u>  Based on the foregoing, it is clear that Plaintiff's assertion that <u>In Re Bristol-Myers Squibb Sec. Litig.</u> only applies to litigation under the PSLRA is incorrect.

### III.  Conclusion

For the reasons stated above, Plaintiff's Motion to Amend is DENIED.  An appropriate Order follows.

Dated: April 1, 2009

                                                  s/ Tonianne J. Bongiovanni
                                                  **TONIANNE J. BONGIOVANNI**
                                                  **UNITED STATES MAGISTRATE JUDGE**