NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
JACK L. FROLOW           ,         :
                                   :
        Plaintiff,                 :    Civil Action No. 05-4813 (FLW)
                                   :
    v.                             :
                                   :    OPINION
                                   :
WILSON SPORTING GOODS CO.,         :
                                   :
        Defendants.                :
_____

**WOLFSON, United States District Judge:**

Presently before the Court is a Second Motion for Summary Judgment Regarding "Licensed Articles" by Defendant Wilson Sporting Goods Co. ("Defendant" or "Wilson") as well as a "Cross-Motion" by Plaintiff Jack L. Frolow ("Plaintiff" or "Frolow")[1].  Plaintiff is an inventor who holds numerous patents involving tennis racquets including U.S. Patent No. 4,690,405 (the "405 Patent") and U.S. Reissue Patent No. RE 33,372 (the "372 Patent").  The instant motions arise out of the procedures for an audit of royalties paid by Defendant to Plaintiff, the holder of the 372 Patent, during the period between 2001 through 2004.  For the reasons discussed below, Plaintiff's motion is denied and Defendant's motion is granted.

---

[1] As discussed infra, although Plaintiff appears to have filed a "Cross-Motion," the substance of the motion renders it an appeal of a decision issued by Magistrate Judge Bongiovanni on July 7, 2009 and the Court will consider it as such.

I. BACKGROUND AND PROCEDURAL HISTORY

This case has a long and tortured history spanning more than five years and three lengthy opinions issued by two District Judges and one Magistrate Judge. Although this Court has recounted the facts of this case in each of its previous opinions, and is incorporating those facts herein, a brief repetition of the relevant facts as well as a recitation of recently developed facts is necessary to the Court's determination of the instant motions.

In March 1989, Frolow and Wilson entered into a License Agreement ("Agreement") with Plaintiff granting Defendant the exclusive right and license worldwide to use, manufacture, sell or otherwise dispose of tennis racquets covered by the 405 and 372 Patents. In exchange, Wilson agreed to pay Frolow royalties based on five percent of Net Sales of the "Licensed Articles" sold in the United States, and two percent of Net Sales of "Licensed Articles" sold outside of the United States. "Licensed Articles" are defined in the Agreement as: "tennis racquets that are covered by one or more unexpired or otherwise valid claims contained in the Licensed Patents and tennis racquets which are based on use of Frolow's know-how."

On October 3, 2005, Plaintiff filed a Complaint in this Court alleging claims for breach of contract and patent infringement arising out of the License Agreement. On November 23, 2005, Wilson filed a Motion to Compel Arbitration with respect to Count I and to dismiss the remainder of Plaintiff's Complaint. On April 5, 2006, the Honorable Stanley R. Chesler issued an Opinion and Order providing that once the issue of which racquets sold by Wilson were subject to the License Agreement was resolved <u>by the Court</u>, any dispute about the calculation of damages would be subject to the dispute resolution mechanism set forth in Section 4.2 of the

Agreement.  Frolow v. Wilson Sporting Goods Co., No. 05-4813, 2006 WL 891201, at * 3 (D.N.J. April 5, 2006).

Following an audit, Plaintiff initially identified a total of 58 Wilson racquets that it alleged Wilson failed to report as Licensed Articles and for which Wilson failed to pay royalties.  In response, Wilson did not dispute that 26 of the 58 racquets should be Licensed Articles; however, Wilson did dispute the inclusion of 29 of the racquets as well as an additional 9 racquets for which Wilson contended that it mistakenly paid royalties.  Thereafter, Plaintiff filed a supplemental expert report which disclosed an additional 4 racquets that Plaintiff alleged were Licensed Articles.  These 42 racquets were the subject of a summary judgment motion filed by Defendant on August 24, 2007.

On March 31, 2008, this Court entered an Order denying in part and granting in part Defendant's motion.  Specifically, and in relevant part, the Court found that 37 of the 42 disputed racquets were not "Licensed Articles" as defined by the License Agreement.  However, the Court denied Defendant's motion for summary judgment as to five of the disputed racquets – T7067, T7455, T5712, T5832 and T7230 – finding that there was an issue of material fact as to whether these five racquets fell within the 372 Patent and, thus, came within the definition of a Licensed Article.  Frolow v. Wilson Sporting Goods Co., No. 05-4813, 2008 WL 8134447 (D.N.J. March 31, 2008).  Plaintiff filed a Motion for Reconsideration which was denied on September 9, 2008.

Thereafter, on November 24, 2008, Magistrate Judge Bongiovanni held a Final Pretrial Conference at which time Plaintiff requested leave to file an Amended Complaint.  On December 12, 2008, more than three years after filing his initial Complaint, Plaintiff filed a Motion for

3

Leave to File an Amended Complaint.  Plaintiff sought to add five additional counts including, in relevant part, a second breach of contract claim stemming from Wilson's failure to comply with the "Best Efforts" clause of Section 7.13 of the License Agreement.  <u>Frolow v. Wilson Sporting Goods Co.</u>, 05-4813, 2009 WL 904049, at *1 (D.N.J. April 1, 2009).

On April 1, 2009, Judge Bongiovanni denied Plaintiff's Motion explaining that Defendant would be unduly prejudiced by Plaintiff's proposed amendments. <u>Id.</u> at *7.  Specifically, Judge Bongiovanni noted that, "[i]n cases such as this, when the initial complaint was filed in 2005; when discovery has closed years ago; when dispositive motions are complete; and when the final pretrial conference has already been convened, the need for additional discovery would be prejudicial to Defendant."  <u>Id.</u>

Plaintiff filed a Motion for Reconsideration of Judge Bongiovanni's Order which was denied on July 7, 2009.  No appeal was filed. Thereafter, Judge Bongiovanni held a Final Pretrial Conference on August 5, 2009 and entered a Final Pretrial Order on August 6, 2009. Specifically, and in relevant part, the Final Pretrial Order limited the issue for trial to whether the five disputed racquets sold during the Audit Period of 2001-2004 were "Licensed Articles." Docket Entry. Nos. 81, 82.

By Order dated November 12, 2009, this Court established that Plaintiff had completed the U.S. audit and ordered Plaintiff to complete its audit of foreign sales by January 11, 2010 and Defendant to respond by February 11, 2010.  The Court additionally set a trial date of March 15, 2010.  However, on January 22, 2010, Defendant informed the Court that the report of foreign sales that Plaintiff provided Defendant was both incomplete and overbroad in violation of this

4

Court's Orders.  Docket Entry No. 10.  Specifically, Defendant explained that Plaintiff's auditor calculated royalties on all racquets instead of the 128 Included[2] and 5 Disputed Racquets as limited by this Court's Summary Judgment Order.   As a result, this Court held a telephone conference on January 28, 2010 with all parties and informed Plaintiff's counsel that he was to abide by the Court's determination of what constitutes a "Licensed Article" subject to audit.

On February 5, 2010, Defendant again wrote to the Court and explained that Plaintiff's revised audit and report still failed to comply with this Court's Summary Judgment Order limiting the number of racquets subject to audit.  Docket Entry No. 102.   Specifically, Defendant advised the Court that the "revised" audit included additional new racquets in violation of numerous Orders of this Court.  Id.  Thereafter, on May 13, 2010, this Court entered an Order that, in relevant part, granted leave to Wilson to file a second motion for summary judgment regarding the "new" racquets that Frolow sought to add to the list of "Licensed Articles."  Docket Entry No. 108.  Moreover, the Order reminded that parties that "the issue before this Court is limited to which racquets being sold by Wilson are subject to the License Agreement, accordingly, 'any dispute about the actual calculation of damages. . . will be subject to the dispute resolution mechanism set forth in Section 4.2 of the License Agreement."  Id.

Thereafter, on May 28, 2010, Wilson filed the instant Second Motion for Summary Judgment Regarding Licensed Articles.  In this motion, Wilson seeks an Order barring Plaintiff from: (1) adding any of 299 New Foreign Racquets; and (2) classifying all of the sales in foreign countries as U.S. Sales.  On July 9, 2010, Plaintiff filed a "Cross-Motion" for an Order allowing Plaintiff

---

[2]The Court notes that the 128 Included Racquets are the racquets that the parties agree were "Licensed Articles" subject to royalties and audit.

5

to present his claim of breach of the best efforts clause in the Parties' License Agreement.

II. DISCUSSION

A. Defendant's Motion for Summary Judgment Regarding "Licensed Articles"

i.  Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

"Whether a product or process infringes the properly construed claims of a patent, literally or under the doctrine of equivalents, is a question of fact." Desper Prods., Inc. v. Qsound Labs, Inc., 157 F.3d 1325, 1332 (Fed. Cir. 1998); see Tanabe Seiyaku Co. v. U.S. Int'l Trade Comm'n,

109 F.3d 726, 731 (Fed. Cir. 1997).  However, the summary judgment standard is still applicable in patent cases.  Desper Prods., Inc., 157 F.3d at 1332.  Indeed, "the grant of summary judgment is appropriate in a patent case where the standards set forth in Rule 56(c) are satisfied.  Paragon Podiatry Lab., Inc. v. KLM Labs. Inc., 984 F.2d 1182, 1190 (Fed. Cir. 1993).  The moving party bears the burden of demonstrating the absence of genuine issues of material fact.  Copelands' Enters. v. CNV, Inc., 945 F.2d 1562, 1565 (Fed. Cir. 1991).  The moving party, however, need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the district court that there is an absence of evidence to support the nonmoving party's case.  Id. at 1565.

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'"  Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial."  Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.

a. The 299 New Foreign Racquets

In the instant motion, Defendant contends that it is entitled to summary judgment concerning the 299 new racquets identified in Plaintiff's foreign audit.  Specifically, Defendant argues that this Court should grant summary judgment for the following reasons: (1) that the foreign audits provided by Plaintiff in January and February 2010 included 299 new racquets in violation of this Court's Orders; and (2) that Plaintiff violated numerous procedural rulings by failing to identify claimed "Licensed Articles" during discovery, in his expert reports or in the Joint Final Pretrial Orders.  The Court agrees.

Initially, the Court finds that Plaintiff's attempt to add 299 new racquets to its foreign audit is barred by the law-of-the-case doctrine.  Similar to issue preclusion, "[t]he law-of-the-case doctrine limits re-litigation of an issue once it has been decided in an earlier stage of the same litigation." Hamilton v. Leavy, 322 F.3d 776, 787 (3d Cir.2003) (citation omitted); see also ACLU v. Mukasey, 534 F.3d 181, 187 (3d Cir.2008) ("Under the law-of-the-case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (citations omitted).  The doctrine  "applies in subsequent proceedings of the same case," Hutchins v. U.P.S., Inc., No. 01-1462, 2005 WL 1793719, at *3 (D.N.J. July 26, 2005) (citation omitted), and protects "traditional ideals such as finality, judicial economy and jurisprudential integrity." Long Branch Citizens Against Housing Discrimination, Inc. v. City of Long Branch, Civ. A. No. 09-49080, 2010 WL 3271733, at *5 (D.N.J. August 17,

2010) (quotations omitted).

However, the law-of-the-case doctrine does not apply if "extraordinary circumstances" warrant reconsideration of an issue decided earlier in the course of litigation. Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116-17 (3d Cir.1997). Extraordinary circumstances include: (1) the availability of new evidence; (2) the announcement of a supervening new law; and (3) a clearly erroneous decision that would create manifest injustice. Id. at 117; see also McDufy v. Marsico, No. 00-0938, 2008 WL 3925167, at *3 (D.Del. Aug.21, 2008) (noting same factors).

In the instant matter, in an Opinion dated April 5, 2006, Judge Chesler held that this Court would determine what constitutes a "Licensed Article" and that the parties would subsequently subject any dispute over royalties to the disputed resolution mechanism set forth in section 4.2 of the parties' Agreement. Frolow, 2006 WL 891201, at *3. Despite Judge Chesler's decision, the foreign audits that Plaintiff provided to Defendant in January and February 2010 appear to contain additional racquets that Frolow's auditor – not this Court – determined were "Licensed Articles" in violation of this Court's Orders and the law-of-the-case doctrine.

Further, in an Opinion dated March 31, 2008, this Court performed a lengthy analysis and claim construction of the 42 racquets which Frolow alleged were "Licensed Articles" under the 372 patent and for which Plaintiff alleged it was entitled to royalties. Frolow, 2008 WL 8134447. In that Opinion, this Court determined that of the 42 disputed racquets only 5 were "Licensed Articles" under the 372 Patent. Thus, this Court limited the racquets available for foreign audit more than two years ago and Plaintiff has identified no "extraordinary

circumstances" that would warrant this Court's reconsideration of any issues decided earlier in the litigation.

Finally, despite numerous opportunities to identify the existence of additional racquets to be construed under the 372 Patent or included in the foreign audit, Plaintiff has never, until now, done so. Indeed, in papers filed in opposition to this motion, Plaintiff admits that he has known about these additional 299 racquets since 2004. Pl's Responsive Fact Statement ¶ 14 ("The 299 racquets. . . are not new racquet models. These racquet models were included in the Royalty Reports furnished to Frolow in their Quarterly Reports during the period of 2001 through 2004."). However, Plaintiff did not identify these racquets during the course of discovery which closed in November 2006. Nor did Plaintiff disclose these racquets in his export reports, in the Joint Final Pretrial Order dated August 2009 or in his September 2009 Trial Brief. Thus, Plaintiff is barred from including these racquets in his audit and the Court will not consider any of these racquets as Licensed Articles during trial.

However, even if Plaintiff had provided a justification for his delinquent disclosure of these additional foreign racquets, Plaintiff has put forth no evidence to demonstrate that any of these new foreign racquets are "Licensed Articles" that would fall within one of the claims of the 372 Patent. It is well-established that Plaintiff, as the party alleging patent infringement, must present evidence to establish that one or more of the patent claims are infringed. <u>Jazz Photo Corp. v. Int'l Trade Comm'n</u>, 264 F.3d 1094, 1102 (Fed. Cir. 2001). As evidenced by the briefs submitted by the parties in connection with Wilson's first summary judgment motion, Plaintiff is

clearly able to perform and provide a patent claim analysis.[3]  Despite this ability, the foreign audits provided to Wilson in January and February 2010 contained no analysis of the 299 new foreign racquets.

Moreover, Plaintiff set forth no infringement data or analysis regarding the racquets in response to Defendant's second summary judgment motion.  Indeed, Plaintiff did not file a brief in opposition to Wilson's summary judgment motion, relying, instead, on the Declaration of Jack Frolow ("Declaration") and a responsive fact statement to oppose Wilson's motion.  These documents, however, do not satisfy Plaintiff's burden.  Plaintiff's Declaration and responsive fact statement do not present any evidence concerning the 299 new foreign racquets, let alone any evidence that would establish an issue of material fact for trial regarding these racquets.  For example, although Plaintiff disputes each factual assertion set forth by Defendant in its Statement of Undisputed Facts, Plaintiff fails to cite to any evidence in support of his disagreement as required by the Federal Rules.  Fed. R. Civ. P. 56(c)("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stiuplations, admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute.").  Further, although the Rules permit a party to rely on a declaration to oppose a summary judgment motion, the declaration must "set out facts that would be admissible in evidence."  Fed. R. Civ. P.

---

[3]The Court notes that although Plaintiff was represented by various different counsel for the first five years of this litigation, as of May 25, 2010, Plaintiff has decided to represent himself pro se.  Although this Court provides pro se litigants some leeway when it comes to filings, the fact that Plaintiff is now proceeding pro se does not excuse him from satisfying his burden.

56(c)(2).  Plaintiff's declaration does not provide anything to demonstrate the existence of a genuine factual dispute.  Thus, Plaintiff has provided no basis with which he can defeat Defendant's motion for summary judgment, and the Court grants summary judgment in favor of Defendant.  See, e.g., Conroy v. Reebok Intern., Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994) (holding that the moving party may satisfy its burden on a summary judgment motion "by showing the district court that there is an absence of evidence to support the nonmoving party's case.").

b. The Classification of Foreign Sales as U.S. Sales

Defendant additionally argues that Plaintiff should be barred from characterizing the sales of any of these additional foreign racquets as sales within the United States such that the five percent royalty rate applies.  The Court agrees.

As discussed above, the License Agreement between the parties establishes that Wilson agreed to pay Frolow royalties based on five percent of Net Sales of the "Licensed Articles" sold in the United States, and two percent of Net Sales of "Licensed Articles" sold outside of the United States.  On November 12, 2009, this Court ordered that the audit of U.S. Sales was closed.  Specifically, the Court "Ordered that whereas Plaintiff has completed his audit under the License Agreement and the Defendant has completed its response for sales in the United States, Plaintiff shall now complete its audit for sales everywhere in the world except the United States and provide the same to Defendant on or before January 11, 2010."  Docket No. 94.  However, in his Declaration in opposition to Wilson's summary judgment motion, Plaintiff now contends:

> [t]he issue I now raise is the royalty rates of two (2%) percent for the foreign sales which should be five (5%) since they are not foreign sales. These sales took place in the United States. The properties of the racquets were delivered to foreign countries. . . The property rights consist of the Property and the License to make, use, or sell in the United States. . .This is a matter of law. As previously stated, the magistrate Judge exceeded her authority be ruling dispositively in denying the Motion to Amend the complaint, Docket Document 76. It is request that I be permitted to present the matters set forth in Document 76 to a jury.

Pl's Declaration ¶8.

To the extent Plaintiff is attempting to add the 299 racquets to his U.S. audit, the Court finds that this audit was closed, at the latest, on November 12, 2009. Docket No. 94. Plaintiff did not appeal this Court's November 12, 2009 Order, and, at this late date, more than a year after the entry of the Order and on the eve of trial, Plaintiff cannot re-visit the issue of whether these new racquets can be considered sales in the United States.

Moreover, to the extent that Plaintiff is somehow trying to appeal Judge Bongiovanni's Order denying Plaintiff's Motion to for Leave to Amend, the Court finds that such an appeal is barred. Indeed, in an Opinion and Order dated April 1, 2009, Judge Bongiovanni held that Defendant would be unduly prejudiced by Plaintiff's proposed amendments to the Complaint and explained that, "[i]n cases such as this, when the initial complaint was filed in 2005; when discovery has closed years ago; when dispositive motions are complete; and when the final pretrial conference has already been convened, the need for additional discovery would be prejudicial to Defendant." Id. Plaintiff filed a Motion for Reconsideration of this Order which was denied by Judge Bongiovanni on July 7, 2009. Plaintiff never appealed Judge Bongiovanni's Order, and, Plaintiff is barred from seeking an untimely appeal of Judge Bongiovanni's Order more than a year after its entry.

13

Further, to the extent that Plaintiff's papers can be read as seeking leave from this Court under Rule 15 to now amend his Complaint to add additional racquets, the Court will deny Plaintiff's attempt to amend his Compaint at this late date. It is well-established that a court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,[or] futility of the amendment." Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000). As evidenced from Plaintiff's Declaration, Plaintiff has known about the existence of these racquets since 2004. Pl's Opp. ¶ 14 ("The 299 new racquets listed in Mr. Severa's Declaration executed on May 10, 2010 are not new racquet models. These racquet models were included in the Royalty Reports furnished to Frolow. . . during the period of 2001 through 2004.") However, Plaintiff has provided no explanation for his delinquent identification of these racquets, let alone provided any justification as to why they should be considered U.S. sales in violation of this Court's clear finding that the U.S. audit was completed in November 2009.

Finally, to the extent that Plaintiff can be understand to argue that a racquet made and sold outside the United States should still be considered a sale within the United States, Plaintiff has provided no factual or legal support for such an argument. For all these reasons, the Court grants Defendant's motion for summary judgment and Plaintiff is barred from characterizing the sales of any of the additional foreign racquets as sales within the United States.[4]

---

[4] The Court notes that Defendant additionally seeks "orders of direction" for the independent auditor in determining any unpaid royalties. See Def's Br. at 28-29. This Court's previous Orders continue to be binding on the parties in this matter and the Court will decline Defendant's invitation to provide additional guidance when the Court's previous Orders are clear

B. <u>Plaintiff's "Cross-Motion"</u>

Finally, to the extent that Plaintiff has filed a "Cross-motion "to allow [Plaintiff] to make a claim that Wilson breached Paragraph 7.1.3 of my License Agreement," Plaintiff's motion is denied as untimely.

Initially, the Court notes that despite being labeled a "cross-motion," Plaintiff's motion is not, in fact, a cross-motion, but an appeal of Judge Bongiovanni's Orders denying Plaintiff leave to amend his Complaint.  Local Civil Rule 7.1.(h) permits the filing of cross-motions that are "related to the subject matter of the original motion."  L.Civ. R. 7.1.(h).  As discussed above, Defendant's Second Motion for Summary Judgment seeks to bar 299 new racquets from being considered "Licensed Articles."  In contrast, Frolow's "cross-motion" seeks to allow Plaintiff to amend his Complaint to add a claim regarding Paragraph 7.1.3 of the License Agreement, a claim that was denied by Judge Bongiovanni in July 2009.  Thus, Plaintiff's motion is not related to Defendant's summary judgment motion, but is, in fact, an appeal of Orders entered by Judge Bongiovanni.

Moreover, Fed. R. Civ. P. 72 provides that a party has 14 days to appeal an Order by a Magistrate Judge.  As discussed above, in an Order dated April 1, 2009, Judge Bongiovanni denied Plaintiff's Motion to Amend his Complaint to add a claim regarding 7.1.3 of the License Agreement.  Further, on July 7, 2009, Judge Bongiovanni denied Plaintiff's  Motion for Reconsideration of her initial Order.  Thus, Plaintiff had until July 21, 2009 to file an appeal. Plaintiff did not file his "cross-motion" until July 7, 2010, nearly a year after Judge

---

and binding.

Bongiovanni's Order denying Plaintiff's Motion for Reconsideration.  Thus, Plaintiff's motion is untimely and Plaintiff is barred  from amending his Complaint to add a claim regarding Paragraph 7.1.3 of the License Agreement.

However, even assuming, <u>arguendo</u>, that this Court would consider Plaintiff's motion as timely, the Court finds that Defendant would be unduly prejudiced if Plaintiff were permitted to amend the Complaint at this late stage in the proceedings. <u>See</u> <u>In re Bristol-Meyers Squib Securities Litigation</u>, 228 F.R.D. 221, 229 (D.N.J 2005).   Plaintiff filed his Complaint in 2005 – nearly five years ago – and discovery closed in 2006.  Thus, Plaintiff's motion to amend arrives nearly four years after the close of discovery.  Moreover, in March 2008, this Court limited the issues for trial to the five disputed racquets.  Indeed, the parties submitted a Joint Final Pretrial Order in August 2009, Trial Briefs in September 2009, and the Court scheduled a trial in this matter to commence in March 2010.  This date has been adjourned for more than nine months and any further delay would seriously prejudice Defendant.  As the court in <u>Bristol-Meyers</u> explained, "permitting such an 'eleventh hour' amendment would necessarily delay the commencement of . . . trial.  Indeed, Defendants would have to examine each new claim and conduct discovery to fairly defend themselves against these new allegations. Allowing these new amendments would also trigger fresh rounds of motion practice further delaying the end of the case. Perhaps most significantly, Plaintiff had previous knowledge of these [racquets] and had ample time to amend its Complaint prior to the expiration of the deadlines to amend pleadings and to conduct discovery. Plaintiff simply offers no satisfactory reasoning as to why these [racquets] were not included in any of the previous Amended Complaints." <u>Id</u>.  For these reasons, the Court denies Plaintiff's Motion to Amend the Complaint.

III. CONCLUSION

For the foregoing reasons, Defendants' Second Motion for Summary Judgment Regarding the "Licensed Articles" is GRANTED and Plaintiff's motion is DENIED.


Dated: December 13, 2010                                         /s/ Freda L. Wolfson
                                                                 Freda L. Wolfson, U.S.D.J.